STATE OF CONNECTICUT *v.* KENNETH THOMAS
(12492)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued October 2—decision released November 17, 1987

*Robert M. Casale,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom were *Jack W. Fischer,* certified legal intern, and, on the brief, *Arnold Markle,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

COVELLO, J. On January 23, 1984, a jury found the defendant guilty of murder in violation of General Statutes § 53a-54a.[1] A judgment of conviction followed. The defendant claims on appeal that the trial court erred in: (1) failing to charge the jury on the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2);[2] (2) admitting testimony concerning a rope allegedly used in the murder; (3) admitting evidence relative to the state of mind of the victim and her daughter; (4) admitting evidence of two acts of violence committed by the defendant; and (5) denying the defendant's motion for mistrial on the ground that improper cross-examination of former counsel impaired the defendant's right to a fair trial

---

[1] General Statutes § 53a-54a provides in pertinent part: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person. . . ."

[2] General Statutes § 53a-55 (a) (2) provides in relevant part: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when . . . (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he [acts] under the influence of extreme emotional disturbance. . . ."

and constituted prosecutorial misconduct. We disagree with each of these claims and find no error.

The jury could reasonably have found the following facts. The defendant lived with the victim, Sara Rose, and her twelve year old daughter in a New Haven apartment. Because of her deteriorating relationship with the defendant, the victim moved out of that apartment on or about March 31, 1982. She and her daughter lived temporarily with her parents while they prepared to move to a new apartment in West Haven. On several occasions the defendant attempted to effect a reconciliation, but the victim rejected his efforts. On Palm Sunday, April 4, 1982, the day the victim was last seen alive, witnesses observed the defendant in the early morning standing behind a pillar near the entrance to the telephone company where the victim was employed. He also was seen that day at the 11 a.m. church service the victim attended, and again in the telephone company parking lot when the victim left work at 7 p.m. A security guard saw the defendant drive the victim's car recklessly out of the parking lot with the victim as his passenger. The victim was not seen again until her body was found floating in the Quinnipiac River in New Haven on May 8, 1982. The victim's hands were bound behind her back, her legs were bound together at the ankles, and a bucket was attached to her feet, all with the type of rope used for clothesline.

The defendant first claims error in the trial court's failure to charge the jury on the lesser included offense of manslaughter in the first degree. A manslaughter instruction is appropriate when the evidence is legally sufficient to justify a conclusion that a murder has been committed "under the influence of extreme emotional disturbance." General Statutes § 53a-55 (a) (2). "[A]n extreme emotional disturbance is one where self-control and reason are overborne by intense feelings such as

passion, anger, distress, grief, excessive agitation or other similar emotions." *State* v. *Elliott,* 177 Conn. 1, 9, 411 A.2d 3 (1979).

A lesser included offense instruction is "purely a matter of our common law"; *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986); rather than a constitutional right. Such an instruction is required when "there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense . . . ." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). In this case, neither did the defendant specifically assert the affirmative defense of extreme emotional disturbance,[3] nor was there sufficient evidence put forth at trial to require a charge on extreme emotional disturbance.[4] See *State* v. *Asherman,* 193 Conn. 695, 732, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *D'Antuono,* 186 Conn. 414, 419–22, 441 A.2d 846 (1982). Indeed, the defendant did not admit that he killed the victim, let alone that he did so under mitigating circumstances. The principal facts on this issue related to the defendant's allegedly distraught condition *after* the victim's disappearance. We conclude that, under these circumstances, the trial court did not err in refusing to charge the jury on manslaughter in the first degree as a lesser included offense.

---

[3] General Statutes § 53a-54a provides in relevant part: "(a) . . . in any prosecution under this subsection, it shall be an affirmative defense that the defendant [acts] under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ."

[4] There was general testimony to the effect that the defendant used drugs. Further, it was claimed that he stated his intention to move in with his grandmother, even though he knew that she resided in housing restricted to the elderly.

The defendant next claims that the trial court erred in admitting testimony concerning a rope allegedly used in the crime. The victim's sister, Joanne Thompson, testified that on Friday, April 2, 1982, she helped the victim move her belongings from the apartment she had shared with the defendant. While there, Thompson observed a clothesline hung with clothes in the basement. On Monday, April 5, 1982, the day after the victim disappeared, Thompson returned to the defendant's apartment to look for the victim and noticed that the clothesline had been cut. At trial, Thompson identified the rope which had been used to bind the victim's hands and feet as similar to the clothesline rope she had observed, first intact and later cut, in the defendant's basement.

The defendant claims that the trial court erred in admitting this testimony without first establishing that the rope removed from the victim was indeed the rope hung as the defendant's clothesline. We disagree. Evidence is relevant if it " 'tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . .' " *State* v. *Fritz,* 204 Conn. 156, 168, 527 A.2d 1157 (1987). Determinations of relevancy are within the broad discretion of the trial court and will not be overturned in the absence of clear abuse of that discretion. Id., 167–68. In making such determinations, a trial court is not required to find as a prerequisite to admissibility that evidence is conclusively linked to other evidence. "Evidence is not rendered inadmissible simply because it is not conclusive. It is admissible if it tends to support a relevant fact even in a slight degree, so long as it is not prejudicial or merely cumulative. . . . The defendant's objection goes essentially to the weight of the evidence rather than to its admissibility." *State* v. *Morrill,* 197 Conn. 507, 548–49, 498 A.2d 76 (1985). In analogous factual settings, this court has explicitly found admissible evi-

dence tending to show that an accused had access to the means to commit the crime charged. See, e.g., *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987) (evidence that handcuffs were used at defendant's place of work admissible to show defendant's access to handcuffs); *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985) (evidence of knife in defendant's possession admissible despite lack of proof establishing it as the knife used in the crime). We find no error in the admission of this testimony.

The defendant next claims error in the admission of testimony concerning the state of mind of the victim and her daughter, from which the jury could have inferred that they feared the defendant. Evidence in this regard consisted of testimony from four witnesses centering on two events. Kevin Moore, a frequent visitor to the home of the victim's parents, and Patricia Rose, the victim's sister, both testified as to certain events of April 1, 1982. Both witnesses stated that on that date, while the victim was staying at her parents' apartment, the defendant came to look for her there. Both witnesses testified that when the victim was told that the defendant was at the door, she ran into a bedroom to hide.

Two other witnesses were Shirley Wright and Sherry Springer, neighbors of the victim and the defendant during the time they lived together. The women testified concerning arguments between the victim and the defendant, and their effect on the victim's twelve year old daughter, Nicole. The witnesses testified that, in one of these incidents shortly before the victim moved out, the defendant had held a knife to the victim's throat. Nicole had sought the neighbors' intervention and had been "shaking," "trembling" and "afraid."

The defendant objected to this evidence at trial and continues to challenge it on appeal on grounds of hear-

say and prejudice. The state introduced the testimony that the victim hid from the defendant to support its theory that the motive for the murder was the deteriorating relationship between the victim and the defendant. The trial court expressly instructed the jury that the purpose of the evidence was to show that the relationship had broken down, and that, consistent with the state's theory of the case, the victim's estrangement from the defendant supplied the motive for him to commit murder.[5] Similarly, the neighbors' testimony relative to the argument and the defendant's knife wielding was admitted to show that the defendant had threatened the victim and, further, to support the state's theory as to motive and intent. Testimony describing Nicole's observable distress as a consequence of the domestic arguments was introduced as further evidence of the deteriorating and stormy relationship between the victim and the defendant.

Nonassertive conduct such as running to hide, or shaking and trembling, is not hearsay. *State* v. *McCarthy,* 197 Conn. 166, 173, 496 A.2d 190 (1985). The trial court correctly determined that the contested testimony was reliable circumstantial evidence of a deteriorated relationship. As such, it was relevant and probative because it tended to support the state's claim that the relationship had broken down, and from that circumstance the jury could infer motive.

[5] The trial court instructed the jury: "Now, that evidence is offered to show what is known as the state of mind of the deceased at that time, and the state of mind of the deceased at that time, the fact that she went into the other room upon hearing that the defendant was downstairs, is offered for what weight you wish to give it on the subject of the relationship between the deceased and the defendant, and the deterioration of that relationship between the deceased and the defendant which the State claims in this case is a motive in connection with this case, but the evidence of her running into the other room is not admitted to show that this defendant had committed any violence towards her or was a bad person in any respect. It is admitted solely to show her state of mind about their relationship, that she would go into the other room upon hearing he was there."

While the testimony concerning these episodes was adverse to the defendant, we find no unfair prejudice. See *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986); *State* v. *Wilson*, 180 Conn. 481, 490, 429 A.2d 931 (1980). Because we hold that the disputed testimony was relevant, not hearsay, and not unfairly prejudicial to the defendant, we find no error on this issue.

The defendant next contends that the trial court erred in admitting evidence of two acts of violence involving him. The first such instance was the argument with the victim, during which the defendant held a knife to the victim's throat. The second such incident involved an argument with the victim's father a few days after her disappearance, which developed into an altercation in which the defendant cut the victim's father's hand with a knife.

With respect to the first incident, we conclude that the trial court properly admitted this evidence as probative of the defendant's motive and intent. Evidence of the violent argument clearly bore on the deteriorated relationship which, the state theorized, supplied the motive for the murder. While "evidence of prior acts of misconduct is inadmissible merely to show a defendant's bad character or tendency to commit criminal acts . . ."; *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311 (1987); such evidence "may be allowed for the purpose of proving . . . *intent* [or] *motive* . . . ." (Emphasis added.) *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). The trial court, furthermore, instructed the jury on the limited ground of admissibility of this evidence. The defendant did not object to the instruction.

As to the second incident, part of the state's proof in this case included the defendant's consciousness of guilt as manifested by his sudden reluctance to communicate with the victim's family following her disap-

pearance. After the victim had terminated their relationship and abruptly moved out of the apartment they had shared, the defendant had made efforts to effect a reconciliation. He had attempted to visit her at her parents' home, had engaged her in conversation at church on Palm Sunday, and was seen waiting outside her place of employment, and in the parking lot there on the last day she was known to be alive. Thereafter, the defendant was unwilling to cooperate with the victim's family in their frantic efforts to locate their daughter. On the sixth day of her unexplained absence, the defendant argued with the victim's father when they encountered each other in the street, knocked the father's hat off, and ran away. The defendant's efforts to secure a reconciliation with the victim prior to her disappearance, contrasted with his avoidance of and hostility toward her family afterward, was relevant evidence from which the jury could infer a guilty state of mind. Such " 'consciousness of guilt' is strong evidence that the person is indeed guilty . . . ." *State* v. *Moynahan,* 164 Conn. 560, 596, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

The defendant claims that the incident with the victim's father constitutes evidence of prior misconduct and, as such, is inadmissible. This is not the case. The victim's father was permitted to testify only as to the defendant knocking his hat off and running away when they met each other on the street. Significantly, he was *not* allowed to testify beyond that to the scuffle that ensued and the resulting knife wound inflicted by the defendant. The jury learned that a knife had been used in the encounter only from the defendant's own account of it. Tape recordings of the defendant's April 10, 1982 telephone calls to the victim's sister and to a police detective were played for the jury as part of the state's case. In those conversations, the defendant characterized the episode as an unprovoked attack, in which he,

as an innocent victim, was acting in self-defense by deflecting the knife wielded by the aggressor, the victim's father, who was thereby cut.

The incident, so portrayed and uncontradicted, can hardly be said to constitute evidence of the defendant's prior misconduct. "Because the admission of such evidence involves judicial discretion, '[o]ur review is limited to whether [the] ruling exceeded the latitude accorded to the exercise of [such] discretion.' " *State v. Smith*, 198 Conn. 147, 158, 502 A.2d 874 (1985); *State v. Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). In this case, the trial court excised irrelevant portions of the tapes, and stated its intention to instruct the jury as to the limited grounds for admissibility of the tape recordings. The defendant, in response, expressly declined the court's offer of such a limiting instruction. "If the trial judge, in the exercise of his judicial discretion, determines that the evidence is relevant and that its probative value outweighs its prejudicial effect, his decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State v. Smith*, supra, 157; *State v. Johnson*, 190 Conn. 541, 549, 461 A.2d 981 (1983). Under these circumstances, we hold that the trial court did not abuse its discretion in admitting evidence of these two acts of violence by the defendant.

Finally, the defendant claims error in the state's cross-examination of the defendant's prior counsel. The defendant called his former attorney as his own witness, to testify that he had advised the defendant not to make statements to anyone and thus to explain the defendant's uncooperative attitude toward the victim's family.

In the absence of the jury, a colloquy took place between counsel and the court. Defense counsel expressed concern about minimizing questions from the

prosecutor upon cross-examination which would require invocation of the attorney-client privilege.[6] Mindful of the fact that the defendant himself had produced this witness and thereby created the situation in which possible unfair inferences might arise, the trial court sought to balance the state's right to full cross-examination with the defendant's right to invoke a privilege free from resulting negative inferences. See *State v. Reddick*, 197 Conn. 115, 126–27, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

The court advised counsel, before examination of the witness began, that the state might be placed in an untenable position if the prosecutor was absolutely forbidden to pursue any line of questioning which might conceivably touch on the issue of attorney-client privilege.[7] The defendant, who persisted in calling the attorney witness, cannot now be heard to complain on appeal that he was "forced" to invoke the privilege in front of the jury. Moreover, any harm that may have been caused by the state's cross-examination was cured by the court's limiting instruction immediately following the conclusion of the attorney witness's testimony,[8] an

[6] "Canon 4 of the Code of Professional Responsibility (Code) imposes on counsel the obligation to preserve the confidences and secrets of a client." *Goldenberg* v. *Corporate Air, Inc.*, 189 Conn. 504, 511, 457 A.2d 296 (1983). "Every client has a right to expect that his lawyer will not disclose his secrets." Id., 512.

[7] The trial court stated: "I don't think I can unfairly sever Mr. Markle's cross-examination by saying to him, 'You cannot ask any question that might possibly be objected to on an attorney/client privilege,' and all I can ask of Mr. Markle is that in his examination, to keep in mind the rulings of the Court."

[8] The trial court stated: "I should advise the jury that there have been apparent objections on the grounds of attorney/client privilege which have been sustained by the Court, and the objections on the attorney/client privilege is a right that exists between an attorney and a client, and you heard some questions by Mr. Markle to which objection was properly made, and in my opinion properly sustained, the conversations were not allowed to be gone into on the ground that they are privileged communications inso-

instruction which was thereafter reinforced at the time of the charge to the jury.[9]

There is no error.

In this opinion the other justices concurred.

far as the Exhibit 2 contains a written version of advice that the attorney gave to the defendant, which one might think is part of an attorney/client privilege as to that advice. There is a waiver of the attorney/client privilege, and that's the reason that was allowed to be examined into."

[9] As part of its charge to the jury at the close of the evidence, the court advised: "During the testimony of Mr. Watson, the attorney, the defense witness, there were several occasions when defense counsel objected to certain questions asked by Mr. Markle on the ground of attorney-client privilege, and the Court sustained some of those objections. The defendant has a right to assert the attorney-client privilege with respect to his discussions with Mr. Watson and the fact that objection was made on that ground shall not be held against the defendant in any way, [n]or should you draw any inferences unfavorable to the defendant because that objection was made."