## State of Connecticut *v.* Richard Barlow
## (10944)

Dupont, C. J., Heiman and Schaller, Js.

Argued October 28, 1992—decision released January 12, 1993

*Richard W. Gifford,* for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,* state's attorney, and *Sandra L. Tullius,* deputy assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Richard Barlow, appeals from a judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a) (1).[1] The defendant claims (1) that the trial court, *Sferrazza, J.,* improperly denied a motion in limine that sought to preclude litigation of an issue previously addressed in an administrative decision, and (2) that the trial court, *McWeeney, J.,* improperly denied a subsequent motion in limine, permitting the state to introduce certain evidence.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 2, 1991, shortly after 11 p.m., Officer Kenneth Gervais of the Hebron police department was patrolling Route 85 in Hebron when he observed the defendant erratically driving a pickup truck. The defendant, who was driving thirty-three miles per hour in a forty-five mile per hour zone, was having difficulty staying on the appropriate portions of the road, at times crossing a pedestrian line on the road shoulder. On the basis of his training and experience, Gervais recognized these irregularities as indicating a driver under the influence of drugs or alcohol.

The officer activated his emergency lights to signal to the defendant to pull over to the side of the road

[1] General Statutes § 14-227a provides in pertinent part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor . . . ."

[2] At oral argument, the defendant expressly abandoned his third claim that the evidence adduced at trial was insufficient to convict him. We accept the defendant's withdrawal of this claim and will not consider it any further. *State* v. *Booker,* 28 Conn. App. 34, 40–41, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992).

for questioning. In apparent response to the officer's pursuit, the defendant turned suddenly onto a dead-end road without first using his signal. The defendant, followed by Gervais, drove to the end of the road, where he parked his truck.

The officer then left his patrol car and stood next to the defendant's truck where he observed additional signs of the defendant's consumption of alcohol. The officer noticed that the defendant's breath had a strong odor of alcohol. Asked by Gervais to produce his license, the defendant dropped it onto the ground. When the defendant stepped out of his truck, he could not maintain his balance and reached for the truck for support. Soon, Officer Kevin Prior arrived on the scene. He too smelled a strong odor of alcohol in the defendant's vicinity. Gervais then administered several field sobriety tests, which further confirmed the officer's initial evaluation that the defendant had operated his vehicle while under the influence of alcohol.[3] On this basis, the officer arrested the defendant for driving while under the influence of alcohol in violation of General Statutes § 14-227a.

At the police station, Gervais sought to administer a breath test to determine the defendant's blood alcohol level. This procedure required the defendant to blow into a tube connected to a machine, but, because he repeatedly failed to make a tight seal around the tube with his lips, he was unable to force enough breath into the machine for an adequate sample. Thus, the machine could not register his blood alcohol level. After several fruitless attempts at blowing into the tube, the defendant informed the police that he had an ear condition

---

[3] Gervais testified that the defendant failed each of the field tests. According to Gervais' testimony, the defendant could not (1) recite the alphabet beyond the letter p, (2) walk heel-to-toe beyond four steps, (3) walk and turn without losing his balance, or (4) stand on one leg.

that made it painful to blow forcefully into the machine. Ultimately, the police failed to establish the defendant's blood alcohol level.

Pursuant to General Statutes § 14-227b (h) (1) (B), the defendant faced a six month license suspension for his apparent refusal to take the breath test. The defendant requested an administrative hearing before an officer of the department of motor vehicles. General Statutes § 14-227b (d). After the hearing, the officer found that the defendant had *not* refused the breath test, and accordingly reinstated the defendant's driving privileges.

In a separate proceeding, the state brought criminal charges against the defendant for driving while under the influence of intoxicating liquor. General Statutes § 14-227a (a) (1). The defendant filed two motions in limine. The first claimed that the administrative finding that the defendant had not refused breath testing was binding in the criminal action by virtue of collateral estoppel. The second motion in limine sought to exclude all references at trial to the facts surrounding the breath testing of the defendant. After the trial court denied both motions, the case proceeded to trial. At the conclusion of the trial, the jury returned a verdict of guilty as charged. This appeal followed.

I

The defendant first claims that collateral estoppel barred the state from contesting at trial the issue of whether the defendant refused to provide a breath sample. According to the defendant, the administrative decision foreclosed any further litigation of this issue in the course of the subsequent criminal proceeding. We disagree.

" 'Collateral' estoppel is an awkward phrase, but it stands for an extremely important principle in our

adversary system of justice." *Ashe* v. *Swensen,* 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). The doctrine operates "to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction." (Internal quotation marks omitted.) *State* v. *Fritz,* 204 Conn. 156, 172, 527 A.2d 1157 (1987). Collateral estoppel applies to both criminal and civil proceedings. Id. In addition, an administrative board, acting in a judicial capacity, may render a decision that qualifies as a prior determination for purposes of collateral estoppel. Id.

"Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 303, 596 A.2d 414 (1991). In this case, if the state's attorney and the commissioner of motor vehicles are in privity with one another, then the same parties were involved in both the administrative proceeding and the subsequent criminal trial. While our courts have struggled with the definition of privity, " 'a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity.' " *State* v. *Fritz,* supra, 173. In this case, we must examine the unity of interests shared by the two different agencies representing the state, the commissioner of motor vehicles in one instance and the state's attorneys within the division of criminal justice in the other. The defendant contends that, because both parties represent the rights of the state, privity exists, which supports the applicability of collateral estoppel. We are not persuaded by this argument.

Our Supreme Court's decision in *State* v. *Fritz,* supra, 170–77, is dispositive of the defendant's claim. There, the court addressed the same issue, i.e., "whether collateral estoppel operates to bar relitigation in a state

criminal proceeding of those issues previously decided by a state administrative agency." Id., 172. The case involved an administrative proceeding in which the hearing officer decided not to suspend the defendant physician's license. The court held that "since no privity exists, the state is not collaterally estopped from prosecuting the defendant." Id., 177.

The court buttressed its conclusion by reasoning that the "purpose of the administrative proceedings . . . is to police licensing requirements within the state, while the state's attorney's interest in the criminal proceeding is in having guilt or innocence determined under the applicable criminal law and in seeing that proper punishment is meted out in the event that the criminal law has been violated. The state's attorney represents the broader public interest in the effective administration of criminal justice. . . ." (Citation omitted; internal quotation marks omitted.) Id., 176.

The analysis in *Fritz* applies with equal force to the present case. Here, the defendant attempts to prevent the relitigation of a favorable administrative decision. As in *Fritz,* however, the administrative decision did not address the broader questions of criminal culpability nor did the commissioner represent the public interest in the effective administration of criminal justice. Rather, the administrative proceeding focused solely on the issue of licensing. Because this administrative proceeding did not serve "the state's interest in having guilt or innocence determined"; id.; the defendant cannot surmount the privity barrier critical to the application of collateral estoppel.

A more recent discussion of privity expands on the analysis of *Fritz.* When collateral estoppel is asserted and the doctrine of privity raised, the key concern to be addressed is whether there was a full and fair opportunity to litigate the issue. *Aetna Casualty & Surety*

*Co.* v. *Jones,* supra, 296. Here, the prior proceeding did not afford the state's attorney a full and fair opportunity to litigate issues pertinent to the criminal case. Thus, the trial court properly permitted the relitigation of matters previously addressed in the course of the administrative proceeding.

## II

The defendant next claims that the trial court improperly allowed the jury to consider evidence on the issue of whether the defendant refused to submit to the breath test. His argument is couched in terms of statutory analysis, i.e., that "refuse" as provided in § 14-227a (f) cannot be construed to include cases in which the driver agrees to take the test but fails to provide an adequate sample. We are not persuaded.

The following additional facts are pertinent to this aspect of the appeal. The defendant filed a motion in limine to exclude all evidence regarding the "test refusal." The court denied the motion, but cautioned the prosecutor, "[j]ust have [the officer] testify about what happened. Don't ask whether there was a refusal." At trial, the state elicited testimony explaining what had transpired during the attempted breath test.

When the court subsequently instructed the jury, it explained that "under our law if a person refuses to submit to a chemical test, you may consider this evidence independently or in conjunction with other evidence and draw from it any reasonable inferences . . . but it is not in and of itself a conclusion as to the guilt or innocence of the defendant. . . . If you find there was an attempt to take the test . . . that is not a refusal from which you can draw inferences."

We note at the outset that our analysis must comport with well established principles guiding the appel-

late review of evidentiary rulings. "Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Indrisano,* 29 Conn. App. 283, 291, 613 A.2d 1375 (1992), quoting *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990). We afford the trial court great deference and indulge every reasonable presumption in favor of an evidentiary ruling. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979). Further, when a constitutional violation is not at issue, the defendant bears the burden of demonstrating the harmfulness of the court's ruling such that it is more probable than not that it affected the trial's result. *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991).

In this case, we cannot conclude that the trial court abused its discretion by allowing the jury to consider testimony on the issue of whether the defendant refused to take the breath test. As § 14-227a (f) makes abundantly clear, "evidence that the defendant refused to submit to a . . . breath . . . test . . . shall be admissible" provided that the requirements of subsection (b) of [§ 14-227b] have been satisfied.[4] Whether the defendant refused to take the breath test was an issue of fact for the jury. General Statutes § 14-227a (f). Accordingly, the trial court did not abuse its discretion by submitting this factual issue to the jury.

Furthermore, the trial court prudently instructed the jury on interpreting the evidence surrounding the attempted breath test. Section 14-227a (f) provides that "[i]f a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a . . .

---

[4] The defendant does not contest compliance with General Statutes § 14-227b (b).

breath . . . test." In instructing the jury, the trial court explained that the jury was free to draw any reasonable inferences in the event that it found refusal. The court proceeded to caution the jury that evidence of refusal *by itself* cannot support a guilty verdict. In short, on these facts, we are unable to discern an abuse of discretion by the trial court.

The defendant relies heavily on the trial court's decision in *Dorman* v. *DelPonte,* 41 Conn. Sup. 437, 582 A.2d 473 (1990). There, the Superior Court stated that § 14-227b (f) (3), governing license suspensions at the administrative level, "does not give the *police* or the *hearing officer* the authority to determine that a refusal to take a test . . . occurs when the driver consents to take the test and fails to perform it properly . . . ." (Emphasis added.) Id., 443. The defendant seeks to apply this analysis to § 14-227a (f) and thereby to preclude the *jury* from considering the evidence of refusal. We find the defendant's reliance on *Dorman* v. *Del-Ponte,* supra, misplaced.

The circumstances in *Dorman* v. *DelPonte,* supra, are patently different from those in the present case.[5] In *Dorman* v. *DelPonte,* supra, a driver appealed an administrative decision in which the board suspended his license for refusing to submit to a chemical analysis. The issue was whether the statute authorized the administrative hearing officer to credit a conclusory determination by the police officer that the driver's failure to provide an adequate breath sample constituted a refusal. Id. The present case is quite different. Here, the jury rendered an independent decision based on the

---

[5] We further note that decisions of the Superior Court are not binding on this court. *State* v. *Johnson,* 28 Conn. App. 708, 716 n.5, 613 A.2d 1344 (1992). Because *Dorman* v. *DelPonte,* 41 Conn. Sup. 437, 582 A.2d 473 (1990), is readily distinguishable from the present case, we do not consider the propriety of the Superior Court's ruling.

evidence adduced at trial. We find no merit in the defendant's attempt to challenge the authority of the jury to consider evidence on the issue of refusal.

The judgment is affirmed.

In this opinion the other judges concurred.