[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to General Statutes § 4-183 from the March 31, 1994 decision of the Commissioner of the Department of Motor Vehicles ("commissioner"). The commissioner, acting by a duly appointed hearing officer, ordered the suspension of the plaintiff's motor vehicle operator's license pursuant to General Statutes § 14-227b(f). The hearing officer ordered the suspension because he determined, inter alia, that the plaintiff had failed a chemical alcohol test administered pursuant to General Statutes § 14-227b. CT Page 3273
The Return of Record ("ROR") discloses the following scenario. On February 18, 1994, the plaintiff was arrested for operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a. After his arrest, the plaintiff was taken to the Thomaston Police Department by State Trooper John Moreno ("arresting officer") and the plaintiff submitted to a breath analysis test measured by an Intoximeter 3000. The arresting officer testified that the test was not administered at the State Police Barrack's because the State Police's intoximeter was not operative at the time of the arrest. Following the arrest and testing, the officer suspended the plaintiff's license for 24 hours and filed a report with the commissioner on an approved motor vehicle department form ("A-44 report"), wherein he noted the results of the test and the basis for his probable cause to arrest the plaintiff. The officer failed to check the box ("the Miranda box") on the first page of the A-44 report indicating that the plaintiff was appraised of his constitutional rights.
At the suspension hearing, the plaintiff objected to the admission of the A-44 report into evidence on the ground that the officer failed to check the aforementioned Miranda box. The hearing officer overruled the objection, but granted the plaintiff's request for a continuance in order to allow the plaintiff to subpoena the police officer to testify at the hearing. The plaintiff subpoenaed the police officer, and requested by way of a subpoena duces tecum that the officer produce at the hearing (1) all service records pertaining to the intoximeter used to perform the breathalyzer test on the plaintiff, including dates when the intoximeter was not operational; (2) a copy of the operations manual of the intoximeter; (3) a copy of the intoximeter's warranties; (4) a copy of the manufacturer's requirements regarding the calibrations for the intoximeter; (5) a copy of the department regulations regarding the calibrations of the intoximeter; (6) a copy of any and all documents indicating that the intoximeter was certified; and (7), a copy of any and all documents indicating that the intoximeter was checked for accuracy in accordance with state regulations.
The officer appeared at the subsequent hearing, held on March 31, 1994, but failed to bring any of the requested materials. The officer testified that he was unable to produce any of the warranty, calibration, or certification records for the intoximeter because these records were in the possession of CT Page 3274 the Thomaston Police Department or the Connecticut Department of Health. Also, the officer testified that the State Police Department Regulations must be obtained through the State Police, Office of Administrative Services. The officer noted that upon receiving the subpoena, he made no effort to obtains the records or to contact the plaintiff's attorney.
The plaintiff then requested another continuance in order to obtain the above-referenced documents, but was informed by the hearing officer that, in order to grant the continuance, the plaintiff would have to waive the forty-five (45) day time limit for the rendering of the decision pursuant to General Statutes § 14-227b(g), and that the plaintiff's motor vehicle operating privileges would therefore be suspended pending the decision. The plaintiff therefore declined the continuance.
On March 31, 1994, the hearing officer rendered his decision suspending the plaintiff's motor vehicle operating privileges pursuant to General Statutes § 14-227b(f). The hearing officer found that (1) the police officer had probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of liquor or drugs or both in violation of General Statutes § 14-227b(b); (2) that the plaintiff was placed under arrest; (3) that the plaintiff submitted to breath analysis and that the results indicated a blood-alcohol content of .10% or more, by weight; and (4) that the plaintiff was operating a motor vehicle. The plaintiff's operating privileges were suspended for one year.
The plaintiff filed a timely appeal from the decision of the hearing officer. In his brief, the plaintiff raises three grounds for his appeal: (1) that the hearing officer erroneously admitted and relied on inadmissible evidence, i.e. the information contained in the A-44 report, in deciding the issues at the suspension hearing; (2) that the plaintiff was denied due process because he was denied the opportunity to produce relevant evidence and cross-examine witnesses; and, (3) that the administrative per se hearing procedures failed to comport with the requirements of due process because the hearing officer was impartial due to his dual role as the proponent of the state's case and as the ultimate decision maker.
A. Standard of Review
Section 14-227b (f) specifies that a hearing to CT Page 3275 suspend an operator's license . . . for operating under the influence of intoxicating liquor shall be limited to a determination by the commissioner of the following pertinent issues: "(1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor . . . (2) was such person placed under arrest; (3) did such person . . . submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." "The language of General Statutes 14-227b [f] is plain and unambiguous. The hearing is expressly limited to the four issues enumerated above." Buckley v. Muzio, 200 Conn. 1, 7, 509 A.2d 489 (1986); Volck v. Muzio, 204 Conn. 507, 512, 529 A.2d 177 (1987). . . .
 As in any administrative appeal, the plaintiff [appealing from an order suspending a license pursuant to General Statutes § 14-227b(f) bears] the burden of proving that the commissioner's decision to suspend [his or her license] was "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." General Statutes 4-183(j)(5); see Lawrence v. Kozlowski, 171 Conn. 705, 713-14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Dept. of Public Utility Control, 216 Conn. 627, 639-40, 583 A.2d 906 (1990).
Schallenkamp v. Delponte, 229 Conn. 31, 39-40, 639 A.2d 1018
(1994) CT Page 3276
B. Failure to Check the Miranda Box
The plaintiff's first argument is based on the officer's failure to check the Miranda box on the A-44 form. The plaintiff argues that the failure to check the box rendered the form inadmissible at the hearing and, alternatively, that the hearing officer erred in finding that the plaintiff was appraised of his constitutional rights. Therefore, the plaintiff argues that the hearing officer's decision to suspend the plaintiff's license was not supported by substantial evidence and was not justified under General Statutes § 14-227b(c).[1]
As noted above, the license suspension hearing under General Statutes § 14-227b is limited to the determination of the four issues provided in subsection (f)(1) through (4), i.e, "(1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor . . . (2) was such person placed under arrest; (3) did such person . . . submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." Schallenkamp v. Delponte, supra,229 Conn. 39-40, Buckley v. Muzio, supra, 200 Conn. 7; Volck v.Muzio, supra, 204 Conn. 514-16. General Statutes § 14-227b(b)[2], which deals with the consequences of an operator's refusal to submit to a blood, breath or urine test, requires police to inform the operator of his or her constitutional rights prior to submitting to such a test.
In Volck v. Muzio, supra, 204 Conn. 512-17, the court reviewed the effect on the suspension proceedings of an officer's failure to comply with the requirements of subsection (b). In Volck, the officer had arrested the plaintiff before he was requested to submit to any tests, contrary to the language of section (b). The court held that
 . . . General Statutes § 14-227a(f), allows, in any criminal prosecution for operating under the influence or with impaired driving ability in violation of subsections (a) or (b) of § 14-227a, the introduction of "evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section § 14-227b . . . provided the requirements CT Page 3277 of subsection (b) of said section have been satisfied."
 Thus it appears that the legislature has attached certain consequences to departures from the procedures specified in § 14-227b(b) and has provided a substantial incentive for the police to comply with those procedures. It is only by strictly following the statutory requirements [of subsection (b)] that an operator's refusal of chemical testing can be used in a criminal prosecution against him for operating under the influence or with impaired ability. On the other hand, the restriction of a license suspension hearing to the four issues specified in subsection (d) of 14-227b [currently subsection (f)] is indicative of the legislative view that the failure to comply precisely with the requirements of subsection (b) should not prevent suspension of the license of a person, arrested with probable cause for believing he was operating under the influence or with impaired ability as a result of intoxicating liquor, who has refused to submit to the prescribed tests.
. . . .
 Subsection [(f)] of § 14-227b . . . continue[s] to limit a license suspension hearing to the four issues specified. Thus, the legislature has manifested its intention that noncompliance with subsection (b), not involving one of the four issues to be determined pursuant to subsection [(f)], does not preclude the suspension of the license of a driver who refuses to submit to a blood, breath or urine test.
(Footnote omitted.) Volck v. Muzio, supra, 204 Conn. 513-16.
Accordingly, the plaintiff's argument, i.e. that the hearing officer erred in failing to find that the plaintiff was not appraised of his constitutional rights, is without merit. The factual issue of whether or not the plaintiff was appraised of his constitutional rights is not included in limited issues to be addressed in the suspension hearing pursuant to subsection (f). A review of the record also indicates that the hearing officer never made such a finding, as it was not relevant to the issues of the suspension hearing. CT Page 3278
The second aspect of the plaintiff's argument, i.e., that the A-44 report was inadmissible due to the arresting officer's failure to check the Miranda box, is similarly without merit. The Regulations of Connecticut State Agencies, Section 14-227b-19
require the A-44 report "to conform with § 14-227b(c) in order for the report and the test results to [be] admissible" in the administrative suspension hearing. (Footnote omitted.)Schallenkamp v. DelPonte, supra 229 Conn. 42. In Schallenkamp, the court held that the report need only comply with the express requirements of subsection (c). Id. As the court explained,
 [s]ubsection (c) was added to § 14-227b in 1981 when the issues related to license suspension were removed from the criminal setting and transferred by subsection (d) [currently subsection (f)] to the department of motor vehicles for administrative determination. Public Acts 1981, No. 81-466, 3. The restriction of the license suspension hearing to the four issues contained in subsection [(f)] indicates that compliance with subsection (c) was not intended to be a prerequisite for a suspension.
 Subsection (c) of 14-227b prescribes not only that the "report of such refusal" bear the signature of a witness to the refusal but also that it be sworn to "by the police officer before whom such refusal was made," that it set forth the grounds for probable cause to make the arrest and that it state that the arrested motor vehicle operator had refused the officer's request to submit to a prescribed test. Its evident purpose is to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer. Subsection (c) is analogous to other statutes that provide for the admissibility of documents certified by a proper official. See General Statutes § 52-165
(records of corporations and public officers), § 52-166 (orders and regulations of state officials), § 52-167 (corporation certificates attested by the secretary of state).
Volck v. Muzio, supra, 204 Conn. 517. Nowhere does subsection (c) require the police officer to indicate that the plaintiff CT Page 3279 was informed of his constitutional rights. Accordingly, the admissibility of the A-44 police report in the administrative suspension hearing is not affected by the officer's failure to check the Miranda box. In addition, because the officer's failure to comply with the requirements of subsection (b) does not prevent the suspension of the plaintiff's license; Volck v.Muzio, supra, 204 Conn. 513-14; and is not included in the four issues to be determined in the administrative hearing, there is no logical reason why the officer's failure to check the Miranda box would render the report inadmissible in the suspension hearing. See Schallenkamp v. DelPonte, supra 229 Conn. 42
(officer's failure to maintain certification for administering breathalyzer tests was not a basis to render A-44 report inadmissible; § 14-227b(c) does not require certification as a basis for admissibility); see also State v. Johnson,28 Conn. App. 708, 718, 613 A.2d 1344 (1992) (admissibility of A-44 report in criminal proceeding pursuant to General Statutes § 14-227a(f) is dependent on compliance with General Statutes § 14-227b(b)). Accordingly, the plaintiff's appeal is dismissed as to this ground.
C. Denial of Due Process
A driver's license, as a property interest, may not be suspended or revoked without due process of law. Bell v.Burson, 402 U.S. 535, 542-43, 91 S.Ct. 1586, 29 L.Ed.2d 90
(1971); Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723,52 L.Ed.2d 172 (1977); Lawrence v. Kozlowski, 171 Conn. 705, 716 n. 8,372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930,53 L.Ed.2d 1066 (1977); State v. Washburn, 34 Conn. App. 557, 565, ___ A.2d ___ (1994).
 Hearings before administrative agencies, . . . although informal and conducted without regard to the strict rules of evidence, "must be conducted so as not to violate the fundamental rules of natural justice." . . . . There is no question that [a] plaintiff [i]s . . . entitled to have [an] application [or case] heard and determined by an impartial and unbiased agency. What we said in Obeda v. Board of Selectmen, 180 Conn. 521, 523-24, 429 A.2d 956 (1980), bears repeating: "While it is true that neutrality and impartiality of members of administrative boards and commissions are essential to the fair and proper operation of these authorities . . . a charge of bias CT Page 3280 must be supported by some evidence proving probability of bias before an official can be faulted . . . ." Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly[,] . . . the burden on such a claim rests upon the person asserting it.
(Additional citations omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 536-37, 525 A.2d 940 (1987).
1. Impartial Hearing Officer
"As to fair hearing procedures, due process requires, at a minimum, an impartial decision maker. Simard v. Board ofEducation, 473 F.2d 988, 993 [(2d Cir. 1973)]." Helm v. WelfareComm., 32 Conn. Sup. 595, 603, 348 A.2d 317 (App. Sess. 1975). The plaintiff argues that the current structure of the per se hearings under General Statutes § 14-227b deprived the plaintiff of an impartial hearing officer — and thus denied him due process of law — because the hearing officer presented the evidence for the commissioner, ruled on its admissibility, and rendered a decision based solely on the evidence.[3] The plaintiff, however, cites no authority in support of this proposition[4] and merely argues in his brief and at oral argument that the current structure of General Statutes § 14-227b, in that the hearing officer is responsible for submitting evidence for the commission, "raises questions as to whether the hearing officer can step out of his various roles so as to insure a fair and impartial hearing."
"The case law, both federal and state, generally rejects the idea that the combination of judging with prosecuting or investigating functions is a denial of due process, although a few exceptions are noted." 2 H. Davis, Administrative Law, § 13.02, p. 175 (1958); 4 J. Stein, G. Mitchell, B. Mezines, Administrative Law, § 33.02[2], p. 33-21 (1991) (noting federal courts have consistently held that the concentration of investigative, prosecutorial and adjudicative functions does not constitute a per deprivation of due process); see Coman v.State, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 702813 (Apr. 13, 1992, Maloney, J.) (court rejected similar argument that the dual role of the hearing officer as prosecutor and judge, and the hearing officer's ruling on the admission of the A-44 report violated plaintiff's due process rights, where A-44 report complied with CT Page 3281 statutory requirements for admission); Shepard v. Goldberg, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 704305 (December 1, 1993, Maloney, J.) (same proposition); see also Doyle v. Secretary of Health Human Services, 848 F.2d 296, 302 (1st Cir. 1988) (no actual bias where doctor's peer review organization acted in a dual role as prosecutor and judge for review of medicaid patient complaints; no deprivation of due process). With respect to the merging of investigatory with adjudicative functions, the Connecticut Supreme Court has held that
 "[i]t is not violative of due process for the same authority which initiated the subject of the hearing to listen to and determine its outcome as long as that authority gives the person appearing before it a fair, open and impartial hearing." . . . An administrative agency can be the investigator and adjudicator of the same matter without violating due process. . . .
(Citations omitted.) New England Rehabilitation Hospital, Inc.v. Commission on Hospitals and Health Care, 226 Conn. 105, 151-52,627 A.2d 1257 (1993). Furthermore, the United States Supreme Court has held that
 [t]he contention that the combination of investigative [or prosecutorial] and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudications has a . . . difficult burden of persuasion. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring [prosecutorial,] investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
Winthrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456,43 L.Ed.2d 712 (1975).
The plaintiff has failed to meet this difficult burden. As noted above, the plaintiff merely argues that the hearing under General Statutes § 14-227b "raises questions" with respect to due process; the plaintiff, however, fails to articulate what CT Page 3282 these questions are, as he is required to do in order to sustain his burden in this respect. See Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 537.
In addition, the plaintiff's argument overlooks the statutory framework of General Statutes § 14-227b(f). The commissioner of motor vehicles is authorized by statute to designate a hearing officer to conduct the suspension hearing. General Statutes § 14-4a ("In any case where a hearing is required or authorized under the provisions of any statute dealing with the motor vehicle department such hearing may be conducted by and the decision rendered therein by the commissioner or by any person or persons designated by him.). The suspension hearing is not a criminal proceeding, and the hearing officer does not represent the public interest in the effective administration of criminal justice. State v. Barlow,30 Conn. App. 36, 41, 618 A.2d 579 (1993). Rather, the administrative proceeding focuses solely on the issue of licensing. Id.
With respect to the plaintiff's argument that the hearing officer is charged with presenting evidence, the A-44 report is submitted to the commissioner and his delegates by the arresting police officer; General Statutes § 14-227b(c); and the requirements for the admissibility of the A-44 report are expressly outlined in that section. Schallenkamp v. DelPonte, supra229 Conn. 42. Accordingly, the hearing officer's decision in this regard is circumscribed by the text of the statute, and the evidence necessary to address the limited issues of the hearing is contained in the A-44 report, which is submitted to the commissioner by the arresting officer. Therefore, the plaintiff has failed to articulate how the hearing officer's determination of whether the A-44 report complied with the requirements of General Statutes § 14-227b(c), in order to be admitted, posed a risk of bias or prejudgment sufficient to implicate due process concerns. Accordingly, the plaintiff's appeal is denied as to this ground. See Coman v. State, supra; Shepard v. Goldberg, supra.
2. Inability to Cross-Examine and Present Rebuttal Evidence
In addition, the plaintiff argues that he was denied due process because the arresting officer failed to bring to the hearing certain information required by plaintiff's subpoena duces tecum. The plaintiff argues that because he would have CT Page 3283 had to agree to a pre-decision suspension in order to obtain the continuance and subpoena the requested documents, he was effectively denied the opportunity to cross-examine the police officer and present rebuttal evidence.
"Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Citations omitted.) Huck v. Inland Wetlands WatercoursesAgency, supra, 203 Conn. 536. In Cordis v. Commissioner ofMotor Vehicles, 9 CSCR 416 (February 4, 1994, Maloney, J.), the court (Maloney, J.) held that the plaintiff had been denied her due process right to effectively cross-examine an adverse witness and present rebuttal evidence. In that case, prior to the administrative hearing, the plaintiff had issued subpoenas for the arresting officers to testify at the hearing. The plaintiff also requested that the officers bring any instruction manuals and repair logs for the intoximeter, but the officers failed to bring the requested materials to the hearing because, as in the present case, they did not have possession of the requested documents. The plaintiff requested a continuance in order to obtain the documents, but the hearing officer denied the request on the basis that the evidence sought was not relevant to the issues raised in the hearing. The court held that the hearing officer's denial of the plaintiff's request deprived the plaintiff of her due process rights as enunciated in Huck v. Inland Wetlands Watercourses Agency, supra,203 Conn. 536.
Cordis v. Commissioner of Motor Vehicles, supra,9 CSCR 416, is readily distinguishable from the facts of the present case. In the present case, the plaintiff did not subpoena the police officer until after the first hearing, and the plaintiff was offered a second continuance in order to obtain the requested material after the police officer testified that the requested material was not in his possession or control. Although the second continuance would have required a waiver of the 45 day period for issuing the decision, and would have resulted in a suspension prior to the decision, this was a result of the plaintiff's failure to request the information prior to the initiation of the proceeding. The subpoena itself was dated March 25, 1994, just six days prior to the second hearing date. On March 3, 1994, however, the plaintiff was CT Page 3284 given notice of the initial hearing date, March 17, 1994. As noted, the plaintiff did not attempt to take any steps to obtain the requested information until March 25, 1994, well after the plaintiff was informed of the date of the first hearing.
The plaintiff apparently chose not to subpoena the police officer for the first hearing as a tactical decision. At the initial hearing, the plaintiff sought to object to the admission of the A-44 report, based on the mistaken conclusion that the officer's failure to check the Miranda box rendered the report inadmissible. Only when the objection was overruled and the hearing was continued did the plaintiff seek to subpoena the officer or the requested documents. Any inability to present this evidence was based on the plaintiff's failure to seek production of relevant information in a timely manner at the initiation of the proceedings. There is no claim that the requested information only became relevant after the first hearing, or that the plaintiff was denied the opportunity to subpoena the police officer and the requested information prior to the initiation of the proceedings. Accordingly, the plaintiff was not denied the opportunity to present rebuttal evidence or cross-examination. See New England RehabilitationHospital, Inc. v. Commission on Hospitals and Health Care, supra, 226 Conn. 142. (due process requires that all parties must be fully apprised of the evidence submitted or to be considered, and must be must be given an opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal). Therefore, the plaintiff's appeal is dismissed as to this ground as well.
For the above noted reasons, the plaintiff's appeal is dismissed.
WILLIAM J. SULLIVAN, J.