STATE OF CONNECTICUT *v.* DAVID SUCKLEY
(9108)

SPALLONE, DALY and LAVERY, Js.

Argued September 12—decision released October 8, 1991

*William R. Schipul,* assistant public defender, with whom, on the brief, were *William Holden,* public defender, and *Barbara Binford,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Patrick J. Clifford,* senior assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction of attempted murder in violation of General Statutes §§ 53a-49 (a) and 53a-54 (a) and of carrying a pistol or a revolver without a permit in violation of General Statutes § 29-35. The defendant claims that the trial court should not have admitted into evidence a photograph of weapons, seized in a separate proceeding involving the defendant, to bolster the credibility of a police officer's testimony. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On January 1, 1989, the victim and his wife were driving on Route 66 in Southington when they

approached a traffic light. The defendant and his girl friend were in a white Pinto in front of the victim's car stopped at the traffic light. When the traffic light turned green and the defendant's car failed to move, the victim sounded his horn. The defendant responded by gesturing at the victim with his middle finger. The victim responded in kind. The victim drove around the defendant's car and entered Interstate 691 eastbound. While on the highway, the victim observed the defendant following him closely. The victim pulled over to the shoulder to let the defendant pass him. As he did so, the defendant made a quick right turn and parked alongside the victim. Both the victim and the defendant exited their cars and an argument ensued. The victim grabbed the defendant and dragged him to the side of the road by an overpass. The victim said to the defendant, "I'd like to throw you off of this bridge." The defendant said to his girl friend, "Shoot this guy." The defendant was not armed at this point. The defendant's girl friend and the victim's wife exited their respective vehicles. Because of the gun threat, the victim told his wife to return to the car. He released the defendant and returned to his car. After he was released, the defendant went to his car and got a handgun for which he had neither a state nor a town permit. As the victim was seated in his car and preparing to shut the door in order to leave, the defendant said, "This is for you," and held the handgun inside the victim's car and shot him. The bullet entered the victim's upper left chest in the area below his collar bone. The defendant returned to his car and fled from the scene. Although the victim and his wife could not read the license plate number, they did observe that the vehicle had a temporary Florida plate.

The victim drove to the Meriden-Wallingford hospital and the police were called. The victim and his wife

gave the police a description of the defendant, his girl friend and their car with the temporary Florida plate. A composite sketch of the defendant was made by a police artist and released to newspapers. Officer William Gordon of the Middlebury police department saw an article about the incident in the Waterbury paper. Approximately a week before the shooting, the officer had stopped the defendant and his girl friend in a white Pinto and cited the defendant for driving an unregistered motor vehicle. The defendant's car had been towed to a motel. Gordon passed this information on to the state police. Through this and other information, the state police located the girl friend. With her permission, the state police searched the motel room and found six rounds of .22 pistol ammunition, the motor vehicle summons issued by Gordon and a photograph of the defendant. The victim and his wife identified the defendant from a photograph array and an arrest warrant was issued for the defendant. After the incident, the defendant had poured kerosene into his car, lit it on fire and threw his gun into Lake Quassapaug. Also, he testified that he did not stay with his girl friend after the shooting because he knew that he had done something wrong and he wanted to avoid the police.

At the trial, Gordon testified as follows without objection to the details of the earlier stop where he had cited the defendant for driving an unregistered motor vehicle and misuse of license plates. "Well, as I approached the car, I noticed that there was a white male in it about twenty-five years old wearing a black leather jacket. I also noticed on the back seat of the car there were a number of items. There was either on the floor or on the back seat, there was a baseball bat, there was a club which said helter skelter on it and I believe there was also several knives and a small hatchet."

He further testified without objection as follows:

"[Prosecutor]: And did you take the articles out that you described in the car? First of all, did you arrest him for any of those articles?

"[Gordon]: No, I didn't at that time.

"[Prosecutor]: Did you take them from the car?

"[Gordon]: Yes.

"[Prosecutor]: And did you also find in the car any type of .22 caliber bullets?

"[Gordon]: Yes, there was approximately ten bullets which I noticed were lying around the front center console of the car.

"[Prosecutor]: And were these shell casings; were they live bullets?

"[Gordon]: They were live bullets.

"[Prosecutor]: So what items did you actually remove from the car and not give back to him?

"[Gordon]: It would have been the baseball bat, two knives and a long stick or club which was painted red and it said helter skelter on it.

"[Prosecutor]: Did you also take the bullets from the car?

"[Gordon]: No, I didn't.

"[Prosecutor]: You left the bullets in the car?

"[Gordon]: Right.

"[Prosecutor]: Why did you do that?

"[Gordon]: I had no reason to seize them.

"[Prosecutor]: Is there any crime against people having bullets?

"[Gordon]: No.

"[Prosecutor]: Did you find a gun in the car?

"[Gordon]: No.

"[Prosecutor]: Did you find a gun on Mr. Suckley?

"[Gordon]: No, I did find a holster in the back seat though.

"[Prosecutor]: What type of holster?

"[Gordon]: That would carry a small caliber revolver."

Gordon testified also that he had seized a Missouri license plate that was on the car and a metal Florida license plate that was in the car. He did not take an expired temporary Florida license plate that was on the floor of the car. The state then attempted to introduce the summons and a photograph of the articles that Gordon removed from the car. The following colloquy occurred which is the crux of the defendant's appeal.

"[Prosecutor]: Thank you. I'd offer these as full exhibits.

"[Court]: What is [exhibit] U, a photo of the items that were removed?

"[Prosecutor]: It's a photo of the items that were removed from the car.

"[Court]: Is there an objection?

"[Defense Counsel]: To the photo, yes. To this document, the summons, no, Your Honor.

"[Court]: And the reason for the objection of the photo?

"[Defense Counsel]: I see no relevance to this particular case. It would maybe have relevance to the identification of the car he was being charged in the G.A.

"[Court]: Want to be heard, Mr. Clifford?

"[Prosecutor]: No, I'll just show Your Honor the picture.

"[Court]: What's the purpose of the offer?

"[Prosecutor]: I guess it's more for the license plates than anything else but I'll leave that up to Your Honor whether I should do it through the testimony.

"[Defense Counsel]: I will stipulate the metal license plates were in the car when Mr. Suckley was using the Bush license.

"[Court]: *The court will allow it not because it's any relation to the crimes alleged here but for the credibility of this officer the court will allow the exhibit.* [Emphasis added.]

"[Defense Counsel]: May an exception be noted?

"[Court]: Exception may be noted.

"(The before mentioned document was marked as state's exhibit T as a full exhibit. The before mentioned photograph was marked as state's exhibit U as a full exhibit.)

"[Prosecutor]: Before I pass these, the other item I think you indicated that you saw in the car but you didn't seize were the ten .22 caliber live bullets and the holster?

"[Gordon]: That's right.

"[Prosecutor]: Anything you seized, you took this picture of. Is that right?

"[Gordon]: Yes.

"[Court]: The exhibit is allowed on the photo, ladies and gentlemen of the jury, not because any of the items shown in that photo are alleged to in any way have been involved in this crime but simply to indicate these are items that the officer took in his arrest procedure and

for that purpose only. And the license plate is to indicate that they were found in the car and removed from the car. You may proceed.''

The sole claim of the defendant is that the trial court improperly allowed the photograph that depicted two knives, a baseball bat, a club with the words ''helter skelter'' on it, and two license plates as a full exhibit. The defendant claims that this put before the jury evidence of violent objects allegedly possessed by the defendant just prior to the date of the offense in this case, and that the graphic presentation of these weapons created an atmosphere of violence that predisposed the jury to believe that the defendant was a bad, violent person.

The trial court admitted the photograph not because it was relevant, but rather to bolster the credibility of Gordon. When the photograph was admitted, however, Gordon's credibility had not been challenged. The trial court improperly admitted the photograph. Connecticut follows the federal rules of evidence in that the credibility of a witness cannot be supported until after it has been attacked. See Fed. R. Evid. 608 (a) and advisory committee note; Connecticut Rules of Court pp. 640–41 (West 1990); *State* v. *Palm,* 123 Conn. 666, 677, 195 A. 195 (1938); *State* v. *Ward,* 49 Conn. 429, 442 (1879); 81 Am. Jur. 2d Witnesses § 643 (1976). ''Where a witness has not been impeached, it is not in general permissible to support his testimony by other evidence, corroborative in its nature, which bears on the credibility of the witness rather than on the issues in the cause . . . .'' 98 C.J.S. Witnesses § 472; *State* v. *Brown,* 187 Conn. 602, 607–608, 447 A.2d 734 (1982); *State* v. *McCarthy,* 179 Conn. 1, 18, 425 A.2d 924 (1979).

Although everything depicted in the photograph was twice put into evidence orally without objection and the

jury could consider it, the defendant did not waive his right to object to the introduction of the same evidence through the photograph. The trial court improperly allowed it in. Our inquiry does not end, however, with this conclusion that the admission of the photograph was improper.

It is a "fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153 (1960); *State* v. *Kwaak,* 21 Conn. App. 138, 150–51, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). We now consider whether the admission of the photograph was so prejudicial to the rights of the defendant as to deprive him of a fair trial. *State* v. *Magano,* 204 Conn. 259, 285, 528 A.2d 760 (1987); *State* v. *Kwaak,* supra, 151. "The ultimate question is whether the claimed erroneous action of the court would have been likely to affect the result." *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976); *State* v. *Kwaak,* supra. We hold that it is not likely that the erroneous admission of the photograph affected the result in this case. "An erroneous ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case." *State* v. *Jeustiniano,* 172 Conn. 275, 283, 374 A.2d 209 (1977); *State* v. *Boyd,* 178 Conn. 600, 604, 424 A.2d 279 (1979). The photograph was little more than a pictorial depiction of testimony given twice by Gordon which was unobjected to and was properly before the jury. "Testimony admitted without objection enters the case as part of the evidence and may be considered by the jury." *State* v. *Hickey,* 23 Conn. App. 712, 718, 584 A.2d 473 (1991). The photograph was cumulative of Gordon's verbal description and the error in the admis-

sion of the photograph was harmless. *State* v. *Fiocchi,* 17 Conn. App. 326, 338, 553 A.2d 181, cert. denied, 210 Conn. 812, 556 A.2d 609 (1989). In addition, the court gave limiting instructions which seemed to insure that the jury would not use the evidence depicted in the photograph for improper purposes. The court told the jury that the items in the photograph were not alleged, in any way, to have been involved in the crime for which the defendant was on trial. The evidence against the defendant was overwhelming not only by the testimony of the victim and the victim's wife but also by the defendant's own testimony which weakened his self-defense claim in that he fled the scene, threw the gun in a lake, set fire to the car and did not stay with his girl friend because in his own words he said he knew that he had done something wrong.

We conclude that the admission of the photograph was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.