STATE OF CONNECTICUT *v.* NEIL BROWN
(AC 19722)

Schaller, Spear and Mihalakos, Js.

Argued February 15—officially released August 8, 2000

*John B. Cantarella*, special public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Neil Brown, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). On appeal, the defendant claims that the trial court improperly (1) admitted testimony of a non-expert witness' observations of the victim subsequent to the sexual assault and kidnapping, (2) determined that the state could cross-examine the defendant's character witness as to the specific facts underlying the defendant's prior arrest for assault, which resulted in the defendant's withdrawal of his character witness, who had already testified, and the court's instruction to the jury to disregard the witness' testimony and (3) instructed the jury regarding consent. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The victim lived in Bloomfield with her aunt, uncle and cousin. She held a part-time job at a grocery store in Bloomfield and was completely dependent on others for transportation to and from work because she did not drive an automobile. The defendant lived in Hartford and had known the victim

for approximately eight or nine years because he was a friend of the victim's cousin and occasionally visited their home.

On May 26, 1997, while at a cookout at the victim's home, the defendant was asked to pick up the victim from work. When the defendant arrived at the grocery store, the victim asked him to give her friend a ride to Hartford. After dropping off the victim's friend, the defendant stopped at his new apartment, which was only a short distance away, telling the victim that he needed to make a quick stop. The defendant asked the victim to go up to his apartment while he used the bathroom. She did so.

After using the bathroom, the defendant brought the victim into the bedroom where he began touching her. He threw her down to the floor and proceeded to remove her sandals, pants and underwear, all the while covering her mouth with his hand. He dragged the victim by her arm into the living room to turn up the volume on the radio. He then inserted his penis into her vagina and proceeded to have sexual intercourse with the victim to the point of ejaculation. Subsequently, he brought the victim into the bathroom to splash water on her face.

After seeking a neighbor's help to no avail, the victim ran down the stairs and waited by the defendant's car before he drove her home. When they arrived at her home, she ran from the car into the house. After washing her face and mouth, the victim told her aunt that the defendant had raped her. When her aunt questioned the defendant, he said that if he did something that upset the victim, he was sorry. The victim's cousin, a Hartford police officer, questioned the defendant and received the same response. The defendant was asked to leave.

An on-duty Hartford police officer went to the victim's home and brought her to Hartford Hospital where a complete rape kit test was performed. That same day, the defendant was charged with sexual assault in the first degree in violation of § 53a-70 (a) (1)[1] and kidnapping in the first degree in violation of § 53a-92 (a) (2) (A).[2] After the incident, the victim was so depressed and afraid to leave her house that her mother had to come from Jamaica to comfort her.

On June 16, 1998, the jury returned a verdict of guilty on both counts. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims first that the court improperly admitted testimony of a nonexpert witness' observations of the victim subsequent to the sexual assault. Specifically, the defendant claims that the testimony of the victim's aunt was inadmissible because it did not fall within the scope of the constancy of accusation doctrine. This argument is misplaced.

The constancy of accusation doctrine provides that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, includ-

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

ing, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996) (en banc).

The constancy of accusation doctrine deals with hearsay testimony recitations of a victim's account of an assault. Here, the witness did not testify as to the actual assault; she described the conduct of the victim subsequent to the attack. A description of the conduct of a victim is admissible as nonhearsay. "A statement made out-of-court that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible. . . . Nonverbal conduct may also be hearsay if intended as an assertion. If the conduct is assertive in nature, that is, meant to be a communication—like the nodding or shaking of the head in answer to a question—it is treated as a statement, and the hearsay rule applies. . . . However, conduct not intended as an assertion is not hearsay. . . . Thus, [n]onassertive conduct such as running to hide, or shaking and trembling, is not hearsay." (Citations omitted; internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 670, 735 A.2d 267 (1999).

The victim's aunt testified regarding the victim's conduct following the assault and regarding her own observations of the victim's crying and fear of being alone.[3]

---

[3] The victim's aunt testified in part as follows:

"[State's Attorney]: Have you ever seen your niece this upset before?

"[Victim's Aunt]: No, I don't remember even seeing her cry.

\* \* \*

"Q: Ma'am, on the days that followed after this incident, did you observe any changes in [the victim's] behavior?

"A: Yeah.

"Q: What did you observe?

"A: She was scared all the time. She didn't want to stay by herself. I had to send for her mother to come and stay with her to calm her down."

The state produced this testimony to show that the victim did not act like a person who has had consensual sexual intercourse. See *State* v. *Martin*, 170 Conn. 161, 365 A.2d 104 (1976) (allowing witness to relate direct observations of person from which trier of fact could infer person's state of mind).

Because the testimony is admissible as nonhearsay, the constancy of accusation doctrine is inapplicable. The standard of review regarding evidentiary rulings is abuse of discretion. "Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Shehadeh*, 52 Conn. App. 46, 50, 725 A.2d 394 (1999). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Martin*, supra, 170 Conn. 166. We conclude that the court did not abuse its discretion in admitting the testimony of the victim's aunt.

## II

The defendant claims next that the court improperly determined that the state could cross-examine the defendant's character witness as to the specific facts underlying the defendant's prior arrest for assault, which resulted in the defendant's withdrawal of his character witness, who had already testified, and the court's instruction to the jury to disregard the witness' testimony. We are not persuaded.

The defendant filed a pretrial motion in limine to prevent the state from referencing his arrest in 1996 for the assault of a woman after he allegedly "slapped and choked a young lady at her apartment." At the

pretrial hearing, the state indicated that it would not refer to the arrest unless the defendant placed his character at issue. The court did not rule on the motion at that time.

During the trial, the defendant renewed his motion in limine. The court ruled that, in the absence of an offer of proof, if the defendant offered evidence as to his character as a nonviolent person, then the state could offer evidence to the contrary. Subsequently, on direct examination of a character witness, defense counsel asked the question, "Can you tell us if you know, if you were aware of [the defendant's] reputation in the community in terms of has he ever, prior to the charges in this case, been accused of sexual misconduct?" He specifically limited the question to "sexual misconduct." During cross-examination, the state began to ask the witness about the defendant's prior arrest for assault, but the defendant interjected before the prosecutor stated more than the date of the event, and the jury was dismissed. Defense counsel stated that the state's inquiry was improper because he had limited his question to the witness to sexual misconduct by the defendant and the state's proposed question related to the defendant's violent and assaultive conduct toward women, which was unrelated to the trait placed in issue. The court concluded, following conference with counsel, that the cross-examination of the witness about the defendant's prior arrest for assault was relevant because defense counsel's question on direct examination of the witness opened the door to the defendant's prior bad act involving an assault of a woman at her apartment. The court gave the defendant the option of having the court strike the testimony of the witness or allowing the witness to be subjected to the questioning regarding the assault. The defendant opted to have the testimony of the witness stricken and now claims that

the mere fact that he was required to choose constitutes a denial of his constitutional right to a fair trial.

"The trial court's decision to deny the motion to exclude a witness' prior record when offered to attack his credibility will be upset only if the court abused its discretion. In determining whether there has been an abuse, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Shaw*, 185 Conn. 372, 384, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). No details of the prior assault were heard by the jury. See id. The court gave an instruction cautioning the jury not to consider the testimony of the witness. Furthermore, the defendant made a tactical decision to exclude the testimony of his witness, rather than allow the impeachment testimony. "The defendant may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." *State* v. *Cruz*, 56 Conn. App. 763, 772, 746 A.2d 196 (2000). The trial court did not abuse its discretion.

### III

The defendant's final claim is that the court improperly instructed the jury regarding consent. Specifically, the defendant claims that the court shifted to him the burden to prove that the victim had consented to sexual intercourse. We disagree.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . .

[this court] will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Whitley*, 53 Conn. App. 414, 423, 730 A.2d 1212 (1999); see also *State* v. *Mackor*, 11 Conn. App. 316, 320–21, 527 A.2d 710 (1987) (charge must adequately instruct jury on law applicable to case to assist jurors in their understanding of nature of charges against defendant and factual elements that must be proved to apply law to facts of case).

"In reviewing the charge as a whole, the instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance. . . . The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Mackor*, supra, 11 Conn. App. 326; see also *State* v. *Lepri*, 56 Conn. App. 403, 412–13, 743 A.2d 626, cert. denied, 253 Conn. 902, 753 A.2d 938 (2000).

The court instructed the jury in relevant part: "Compelled sexual relations are different from consensual sexual relations. The term consensual sexual relations means full consent, and that clearly implies that a person should always be free to decline to go beyond a certain point. If you find that [the victim] consented to the sexual intercourse, you cannot find that the act was compelled. But such consent must have been actual and not simply acquiescence brought by force or fear. The fact that a victim submits to a defendant's demands after the use of force does not amount to consent on her part. And the victim need not resist to the point of physical injury in order to establish that she did not consent to the sexual activity. In short, in order for you to determine that [the victim] consented to the sexual activity in this case, you must find that it was truly voluntary on her part."

The court's instruction directed the jury to find the defendant not guilty if it found that the victim con-

sented. See *State* v. *Bouier*, 44 Conn. App. 548, 554, 690 A.2d 889 ("[c]ontrary to the defendant's assertion, the court did not instruct that the only way the jury could acquit him was if it found that the victim had consented, but rather, that if it were to find that the victim had consented to the acts that constituted the basis for the charge, then it must acquit him"), cert. denied, 241 Conn. 903, 694 A.2d 40 (1997).

The defendant's claim that the jury instruction suggested that consent is subjectively based on the victim's understanding is without merit. "The fact that any act engaged in under compulsion would necessarily be nonconsensual . . . does not impose upon the court a duty to instruct the jury on consent as if it were still a statutory element." (Citation omitted; internal quotation marks omitted.) *State* v. *Mackor*, supra, 11 Conn. App. 324. Considered in its entirety, the jury instruction was correct in law and sufficient to guide the jury in its verdict.

The judgment is affirmed.

In this opinion the other judges concurred.