# STATE OF CONNECTICUT *v.* CURTIS BURNEY
## (SC 18098)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 16—officially released August 19, 2008

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom were *Jessica Ragosta*, certified legal intern, and, on the brief, *John Fahey*, senior assistant state's attorney, and *Jessica Probolus*, special assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The sole issue in this appeal is whether the trial court improperly admitted testimony by two constancy of accusation witnesses regarding the demeanor of a sexual assault victim at the time she reported the assault. The defendant, Curtis Burney, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and one count each of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), risk of injury to a child in violation of General Statutes (Rev. to 2003) § 53-21 (a) (2), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On appeal, the defendant claims that the trial court improperly permitted two constancy of accusation witnesses to testify regarding the victim's demeanor when she reported the sexual assault. We disagree and, accordingly, affirm the judgment of the trial court.

From the evidence adduced at trial, the jury reasonably could have found the following facts. In October,

2003, the victim[1] was a fifteen year old high school student. On Wednesday, October 22, 2003, she was absent from school due to a suspension for fighting. The victim was good friends with the defendant's daughter and made arrangements that day to meet her at the defendant's house at 11:30 a.m. At around 11 a.m., when the victim arrived at the defendant's home, the defendant was the only person in the house. After entering the house, the victim joined the defendant in the living room to watch television, seating herself on a couch opposite the defendant. The victim was comfortable treating the defendant's home as her own because of her friendship with the defendant's daughter and the fact that the defendant and the victim's mother also were friends.

Soon thereafter, the defendant left the living room briefly and, upon returning, closed the door to the room and sat down next to the victim on the couch. The defendant tried to kiss the victim, who pushed him away. He then put his hands on her thighs and said, "you're my pretty young thing." When the victim told the defendant to get away from her, the defendant responded: "[Y]ou're going to give me what I want or I'm going to kill you."

The defendant then proceeded to assault the victim sexually. At one point, the victim tried to stand up, but the defendant pushed her back down onto the couch and continued to assault her. During the assault, the defendant asked the victim if she liked it, to which she did not respond.

Thereafter, the defendant withdrew his penis, ejaculated on the floor in front of the couch, and wiped up his semen with a rag. The entire assault lasted approxi-

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

mately fifteen minutes. After dressing quickly, the victim attempted to leave. Before the defendant allowed her to go, however, he threatened that he knew when her mother went to work and that "it would be it for [her]" if she told anyone about the incident.

After the assault, the victim walked straight home, took a shower and went out briefly to pick her brother up at the school bus stop and bring him home. At no point during the remainder of that day or the days that followed did the victim tell anyone about the assault.

On Tuesday, October 28, 2003, the victim returned to school following the completion of her suspension. That day, she told Susan Thorpe, a teacher in whom she often confided, that her best friend had been raped. The following day, the victim spoke to Thorpe again, this time telling her that she had been raped by the defendant at his home. The victim appeared scared and was shaking and crying as she reported the sexual assault to Thorpe.

Thorpe brought the victim to the school's resource officer, East Hartford police officer Peter Slocum. The victim told Slocum that the defendant had raped her the prior week. While reporting the incident to Slocum, the victim appeared scared and upset and, at one point, went to the corner of Slocum's office to throw up into a trash can.

The victim was examined by a physician on October 31, 2003, nine days after the assault. The exam was inconclusive, neither confirming nor disproving that the victim had been raped. No traces of semen or other physical evidence were uncovered during the course of the medical examination.

On November 18, 2003, the defendant went to the East Hartford police department, at which time the police informed him of the allegations against him. The

defendant consented to a search of his home and then returned home alone. Approximately twenty minutes later, the police arrived at his home and conducted a search of the area where the assault allegedly had occurred. The officers observed that the floor in front of the couch and a couch cushion were damp and appeared to be stained. The officers also noted a bucket of water with a mop in it just outside the room. Although several items from the home were sent to the state forensic science laboratory for testing, the police discovered no physical evidence directly linking the defendant to the sexual assault.

On February 2, 2004, the defendant was arrested in connection with the sexual assault of the victim. He was charged subsequently in a seven count information with two counts each of sexual assault in the first degree and sexual assault in the second degree, and one count each of kidnapping in the first degree, risk of injury to a child, and threatening in the second degree. The defendant pleaded not guilty to all charges and elected a jury trial.

The victim testified on the morning of the first day of trial, and her direct testimony is the source of much of the foregoing factual background. Thereafter, defense counsel conducted a vigorous cross-examination of the victim, focusing intently on her failure to report the assault to the police, her mother or anyone else in the six day interval between the date of the assault and her first day back at school. Defense counsel also attempted to elicit evidence from the victim and others establishing that the victim had been in the defendant's house voluntarily subsequent to the assault, and had even received a ride to school from the defendant without complaint or apparent fear or unease.

Prior to the conclusion of the cross-examination, and outside the presence of the jury, the court heard argu-

ments regarding the admissibility of Thorpe's and Slocum's testimony concerning the victim's emotional state when she told them about the assault. The state sought to offer the testimony of Thorpe and Slocum to rebut defense counsel's impeachment of the victim on the basis of her failure to report the assault until seven days after it occurred. Defense counsel objected to the admission of the testimony on the ground that Thorpe and Slocum were presented as constancy of accusation witnesses and demeanor evidence is beyond the scope of constancy testimony under *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996).

After hearing the parties' arguments, the trial court characterized defense counsel's cross-examination of the victim regarding the time lapse before she reported the sexual assault and her subsequent interactions with the defendant as "fairly [effective]," and determined that Thorpe's and Slocum's testimony as to the victim's demeanor at the time she reported the assault was "not only appropriate but virtually essential . . . ." The trial court ultimately allowed the state to elicit the demeanor testimony under *State* v. *Ellison*, 79 Conn. App. 591, 606, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003), as a prior consistent statement to rehabilitate the victim's credibility insofar as it related to her delay in reporting the incident.

Thereafter, Thorpe and Slocum testified to the fact and timing of the victim's complaint and her identification of the defendant as her assailant. The state also elicited testimony from both witnesses regarding the victim's emotional state when she reported the assault. Immediately after Thorpe's direct examination testimony, the court gave the jury the following limiting instruction: "[T]his testimony is presented to you for the simple purpose of reflecting on the credibility of the [victim], to indicate that, [at] a time somewhere proximate to the events that are reported, she reported

these events in general terms to somebody, in particular, this individual. It is being offered to prove that it was spoken in that time frame so that you may consider that fact as bearing upon her credibility as a witness in this trial. It is not offered for the truth of its contents and, as you observed, its contents have not been related to you in part for that purpose but just the fact of the report so that you may consider it in the time frame it was made and to the person made as bearing upon the credibility of her testimony at trial. That's the limited use for which [you] may consider it." The court gave a similar instruction after Slocum's testimony.

The jury returned a verdict of guilty as to each of the seven counts, and the trial court rendered judgment in accordance with the verdict.[2] This appeal followed.[3]

The defendant claims that the demeanor testimony of Thorpe and Slocum was not admissible under the constancy of accusation doctrine set forth in *State* v. *Troupe*, supra, 237 Conn. 284, and was not admissible as a prior consistent statement or under any exception to the hearsay rule. Further, the defendant argues that the testimony, even if admissible, should have been excluded because it was unfairly prejudicial. The defendant asserts that the trial court abused its discretion in allowing the jury to consider this testimony and urges this court to remand the case for a new trial.

The state counters that the trial court properly allowed the state to elicit the demeanor testimony as evidence of prior consistent conduct under *State* v. *Ellison*, supra, 79 Conn. App. 606. The state maintains that *Troupe* is not applicable to demeanor testimony

[2] The defendant received a total effective sentence of twenty-four years imprisonment, suspended after fourteen years, and twenty years probation with special conditions.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

that is used to rebut a suggestion of recent fabrication.[4]
We agree with the state that the demeanor testimony
was admissible but employ different reasoning to reach
that result.

The standard that we apply in reviewing a trial court's
evidentiary ruling depends on the context in which the
ruling was made. See *State* v. *Saucier*, 283 Conn. 207,
219, 926 A.2d 633 (2007) ("the function performed by
the trial court in issuing its ruling should dictate the
scope of review"). When a trial court's determination
of admissibility is founded on an accurate understand-
ing of the law, it must stand unless there is a showing
of an abuse of discretion.[5] Id., 218. When the admissibil-
ity of the challenged testimony turns on the interpreta-
tion of an evidentiary rule, however, we are presented
with a legal question and our review is plenary. See id.
"For example, whether a challenged statement properly
may be classified as hearsay and whether a hearsay
exception properly is identified are legal questions
demanding plenary review." Id. In the present case,
the issue before us is whether the trial court correctly
applied the law in making a determination that the de-
meanor testimony of a constancy of accusation witness
was admissible as a prior consistent statement. The
proper scope of our review is therefore plenary.

Turning to the applicable legal principles, we begin
by noting that the constancy of accusation doctrine
was fully assessed, refined and reaffirmed by this court
slightly more than one decade ago in *State* v. *Troupe*,

---

[4] As an alternate ground for affirmance, the state argues that the testimony
is admissible as evidence of nonassertive conduct to prove the victim's state
of mind when she reported the assault. Because we conclude that the
testimony is admissible on another ground, we need not address this
argument.

[5] "For example, whether a statement is truly spontaneous as to fall within
the spontaneous utterance exception [to the hearsay rule] will be reviewed
with the utmost deference to the trial court's determination." *State* v. *Sau-
cier*, supra, 283 Conn. 219.

supra, 237 Conn. 284. In *Troupe*, we explained the continued necessity and vitality of the rule, albeit in a more narrowly tailored form, when we stated that, "[a]lthough we are not yet willing to reject the constancy of accusation doctrine completely due to biases still extant in our society, we are persuaded that restricting the evidence adduced thereunder to testimony regarding the fact of the complaint provides a more reasonable accommodation of the interests of the defendant, the state and the victim than does our current rule." Id., 303. The Connecticut Code of Evidence, which became effective in 2000, adopted this modified approach. See Conn. Code Evid. § 6-11 (c).[6]

Essentially, the constancy of accusation doctrine operates as an exception to two evidentiary rules. First, it allows evidence to be admitted for the purpose of bolstering the testimony of the sexual assault victim *before* her testimony has been impeached, in contravention of the general rule that evidence offered to support a witness' credibility is inadmissible until such time as it has been attacked. *State* v. *Suckley*, 26 Conn. App. 65, 72, 597 A.2d 1285 (1991) ("Connecticut follows the federal rules of evidence in that the credibility of a witness cannot be supported until after it has been attacked"), cert. denied, 221 Conn. 901, 600 A.2d 1028 (1991); see Conn. Code Evid. § 6-6 (a); *State* v. *Brown*, 187 Conn. 602, 607–608, 447 A.2d 734 (1982). This operative aspect addresses the central purpose of the constancy of accusation doctrine, namely, to counter a jury's potential inclination to draw a negative inference from a victim's failure to report a sexual assault. "The

---

[6] Section 6-11 (c) of the Connecticut Code of Evidence provides in relevant part: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made . . . . Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

narrow purpose of the rule was to negate any inference that because the victim had failed to tell anyone that she had been raped, her later assertion of rape could not be believed." (Internal quotation marks omitted.) *State* v. *Troupe*, supra, 237 Conn. 296, quoting *State* v. *Hill*, 121 N.J. 150, 159, 578 A.2d 370 (1990).

Second, the constancy doctrine allows a sexual assault victim's statements to be admitted when they otherwise would be barred as hearsay. This explains the requirement that such testimony be admitted only for corroborative purposes and not as substantive evidence. Conn. Code Evid. § 6-11 (c). The constancy of accusation doctrine, however, does not operate to bar evidence regarding the details of the reported sexual assault that otherwise is admissible under other rules of evidence. See *State* v. *Troupe*, supra 237 Conn. 304 n.19 ("[o]f course, the rule . . . does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication"). By its very terms, *Troupe* merely serves to define the contours of the constancy of accusation doctrine. If the otherwise relevant testimony elicited from the constancy witness is not hearsay, or is admissible under an established hearsay exception, then it is within the trial court's discretion to admit it. See id.

In the present case, neither party argues, nor did the trial court conclude, that the testimony of Thorpe and Slocum regarding the victim's demeanor was admissible under the constancy of accusation doctrine. The witnesses' testimony as to the victim's demeanor at the time she reported the sexual assault clearly lies beyond the purview of *Troupe*. Testimony that the victim was crying, shaking, shy or scared as she reported the assault does not corroborate "the fact and timing of the victim's complaint" or provide only those details

"necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator."[7] Id., 304; see also *State* v. *Ellison*, supra, 79 Conn. App. 606 ("[a]ny testimony concerning the victims' presentation while being interviewed does not fall within the *Troupe* limitations because it is not a detail of the sexual assault . . . but describes the victims' demeanor while *reporting* the sexual assault" [emphasis in original]).

The defendant instead argues that the trial court improperly admitted the demeanor testimony on the ground that it qualified as a prior consistent statement offered to rebut a charge of recent fabrication. We agree that the testimony was not admissible as a prior consistent statement.

The trial court recognized that the demeanor testimony in this case was "beyond the issue of constancy of accusation . . . ." On the record and out of the presence of the jury, and in response to the defendant's objection to the admission of the testimony, the court commented that "we're really almost talking about a prior consistent statement because there's been a claim [of] a recent fabrication here and repeated impeachment by omission based on conduct." The court relied primarily on *Ellison* in making its ruling.

The defendant in *Ellison* was convicted of various crimes relating to an incident involving the sexual

[7] In a case involving strikingly similar facts, the Appellate Court concluded that a defendant's objection to testimony regarding the demeanor of a sexual assault victim on the ground that it was outside the scope of the constancy of accusation doctrine was "misplaced." *State* v. *Brown*, 59 Conn. App. 243, 246–48, 756 A.2d 860 (2000) (testimony as to victim's nonassertive conduct after she had been sexually assaulted, including crying and manifestation of fear, was not barred by hearsay rule, and was admissible without regard to constancy of accusation doctrine, it having been relevant to rebut any suggestion that victim had consensual intercourse with defendant), appeal dismissed, 256 Conn. 740, 775 A.2d 980 (2001).

assault of two underage girls. *State* v. *Ellison*, supra, 79 Conn. App. 594–95. The defendant appealed his conviction, claiming, inter alia, that the trial court improperly had admitted testimony in violation of the constancy of accusation rule. Id., 604. One of the constancy witnesses was a licensed social worker, who had been allowed to testify as to "each of the victims' reactions and emotional states when she interviewed them." Id., 605. Another constancy witness was a community outreach police officer who testified that one of the victims was "frightened" and "reluctant" when he interviewed her. Id., 606–607. The Appellate Court recognized that this demeanor testimony was outside the scope of the *Troupe* limitations and upheld its admission under the "doctrine of prior consistent statements." Id., 606. We disagree with the reasoning in *Ellison*.

We first note that "[p]rior consistent statements of a witness are generally regarded as hearsay"; *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998); which is defined as "[a] statement made out of court which is offered to establish the truth of the facts contained in the statement . . . ." *State* v. *Packard*, 184 Conn. 258, 274, 439 A.2d 983 (1981); see also Conn. Code Evid. § 8-1 (3) (" '[h]earsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted"). Prior consistent statements generally "are not admissible at trial, either for their truth or for the purpose of repairing a witness' damaged credibility." *State* v. *Hines*, supra, 803; see also Conn. Code Evid. § 6-11 (a). There are exceptions to the general rule, however, when the credibility of such a witness has been impeached by a specified mode of attack. See, e.g., *State* v. *Valentine*, 240 Conn. 395, 413, 692 A.2d 727 (1997); see also Conn. Code Evid. § 6-11 (b).[8] The

[8] Subsection (b) of § 6-11 of the Connecticut Code of Evidence provides: "If the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness, (2) a suggestion of bias, interest or improper

exception most relevant to the present case allows a witness' prior consistent statement to be admitted as a means of rebutting "a suggestion of recent contrivance . . . ." Conn. Code Evid. § 6-11 (b) (3). A suggestion of recent contrivance need not be made explicitly. For the exception to apply, the trial court need only find that "there [is] sufficient evidence to permit a jury to draw an inference of recent fabrication . . . ." *State* v. *Hines*, supra, 806.

In the present case, the trial court admitted the demeanor testimony as a prior consistent statement for the purpose of rehabilitating the victim's credibility following a vigorous cross-examination during which defense counsel attempted to portray the victim as untruthful because of her delay in reporting the assault. We conclude, however, that the testimony offered by Thorpe and Slocum describing the victim's demeanor was not admissible as a prior consistent statement because their testimony in that regard did not constitute evidence of a statement or assertive conduct by the victim.

We therefore proceed to examine an alternative approach. It is well established that this court may rely on any grounds supported by the record in affirming the judgment of a trial court. See, e.g., *Henderson* v. *Dept. of Motor Vehicles*, 202 Conn. 453, 461, 521 A.2d 1040 (1987) ("[t]he . . . judgment will be affirmed, though based on erroneous grounds, if the same result is required by law" [internal quotation marks omitted]). We conclude that the trial court properly allowed the state to elicit the demeanor testimony because such testimony does not qualify as hearsay and thus was

motive that was not present at the time the witness made the prior consistent statement, or (3) a suggestion of recent contrivance, evidence of a prior consistent statement made by the witness is admissible, in the discretion of the court, to rebut the impeachment."

admissible at the trial court's discretion if it otherwise was relevant and not unduly prejudicial.

Although nonverbal conduct may be considered hearsay if it is assertive and intended as a communication; see, e.g., *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993); conduct that is nonassertive is not considered a statement for hearsay purposes. See Conn. Code Evid. § 8-1 (1), commentary ("[t]he effect of th[e] definition [of the term 'statement' in the hearsay rule] is to exclude from the hearsay rule's purview nonassertive verbalizations and nonassertive, nonverbal conduct"). Nonverbal conduct or a statement that does not purport to assert anything cannot be offered for the forbidden hearsay purpose of "establish[ing] the truth of the matter asserted." Conn. Code Evid. § 8-1 (3); see also *State* v. *Hull*, 210 Conn. 481, 498–99, 556 A.2d 154 (1989) ("[i]f the statement is not an assertion . . . it is not hearsay" [internal quotation marks omitted]).

Connecticut case law is consistent with this principle. For instance, in *State* v. *Thomas*, 205 Conn. 279, 284–86, 533 A.2d 553 (1987), this court held that a neighbor's testimony regarding the emotional distress of the daughter of a murder victim was admissible as evidence of the defendant's motive. In *Thomas*, we explicitly concluded that "[n]onassertive conduct such as running to hide, or *shaking and trembling*, is not hearsay." (Emphasis added.) Id., 285. The Appellate Court, following our decision in *Thomas*, also has upheld the admission of testimony regarding demeanor as nonassertive conduct. In *State* v. *Brown*, 59 Conn. App. 243, 756 A.2d 860 (2000), appeal dismissed, 256 Conn. 740, 775 A.2d 980 (2001), the Appellate Court determined, on very similar facts to those in the present case, that it was permissible for the aunt of a sexual assault victim to testify as to the victim's behavior after the assault for the purpose of showing that she was not "act[ing] like a person who has had consensual sexual intercourse."

Id., 248. The victim's aunt testified that she had observed the victim crying, as well as conduct evincing a fear of being alone. Id., 247. The court determined that such conduct was nonassertive and, thus, that the aunt's testimony was not hearsay. Id., 248; see also *State* v. *Galarza*, 97 Conn. App. 444, 454, 906 A.2d 685 (testimony regarding witnesses' observation of murder victim's demeanor admissible as nonhearsay to show victim's fear), cert. denied, 280 Conn. 936, 909 A.2d 962 (2006); *State* v. *Martin*, 38 Conn. App. 731, 741–42, 663 A.2d 1078 (1995) (mother of sexual assault victim allowed to testify that victim was "frightened, sad, unhappy and confused" in weeks after assault occurred), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996).

Other jurisdictions have adopted the same approach when presented with similar facts. Recently, the Arizona Supreme Court upheld the admission of demeanor testimony in an appeal from a murder conviction. See *State* v. *Ellison*, 213 Ariz. 116, 132, 140 P.3d 899, cert. denied, 549 U.S. 1000, 127 S. Ct. 506, 166 L. Ed. 2d 377 (2006).[9] The Arizona court, citing *State* v. *Thomas*, supra, 205 Conn. 279, among other cases, concluded that a police detective's testimony describing the emotional reaction of the defendant's accomplice when discussing the defendant was not hearsay. *State* v. *Ellison*, supra, 213 Ariz. 132. The detective "testified that when [the defendant's accomplice] discussed [the defendant], his hands shook, his voice broke, and his eyes welled up as if [he was] about to cry." Id. The defendant argued that the testimony was inadmissible hearsay, but the court, noting the lack of any "specific evidence or circumstances indicating [that the accomplice] intended his conduct to assert his fear of [the defendant]," concluded that "[m]ere speculation as to [the accomplice's]

---

[9] It is pure happenstance that the caption of this Arizona case is identical to that of the principal case on which the trial court relied.

intent, without independent evidence, [was] not enough [to make the accomplice's demeanor hearsay]." Id.

In another murder case, *Layman* v. *State*, 652 So. 2d 373, 375 (Fla. 1995), the Florida Supreme Court determined that testimony regarding the victim's demeanor the night before her murder was admissible. The court held that "[testimony] [t]hat the victim was in fear and started crying [consisted of] observations of physical demeanor and not hearsay comments." Id. The Michigan Court of Appeals also has addressed this issue, and is in accord. See *People* v. *Davis*, 139 Mich. App. 811, 813, 363 N.W.2d 35 (1984) (child sexual assault victim's act of crying is "so patently involuntary that it cannot by any stretch of the imagination be treated as a verbal assertion"); see also *People* v. *Gwinn*, 111 Mich. App. 223, 246, 314 N.W.2d 562 (1981) (rape victim's emotional response to defendant's picture in photographic array was not " 'statement' " within meaning of hearsay rule), appeal denied, 417 Mich. 949 (1983). Thorpe's and Slocum's testimony as to the victim's demeanor likewise clearly falls within the category of nonhearsay testimony because it was based on their direct observations that the victim was scared, crying, upset and shy.

The defendant cites no case, in this or any other jurisdiction, that treats testimony regarding nonassertive demeanor as inadmissible hearsay. Rather, the defendant attempts to invoke the policy justifying the constancy of accusation doctrine to argue that demeanor testimony should be excluded under these circumstances as inconsistent with the rationale of *Troupe*. The defendant argues that the victim's demeanor while reporting the sexual assault is unnecessary to accomplish the goal of short-circuiting any jury bias based on a failure to report the incident. The defendant fails to recognize, however, that the demeanor testimony is *not* hearsay and, therefore, is admissible for *any* proper purpose provided it is more probative

than prejudicial. The defendant's argument thus is unsupported by, and inconsistent with, our precedent. *Troupe* simply does not apply to demeanor testimony, regardless of whether the witness is labeled as a constancy of accusation witness; see *State* v. *Troupe*, supra, 237 Conn. 304 n.19; and *Thomas* specifically allows such testimony as long as it relates to nonassertive conduct. See *State* v. *Thomas*, supra, 205 Conn. 285.

The defendant further contends that the victim's demeanor in this case was so intertwined with her verbal report of the assault that her demeanor cannot be treated as nonassertive, nonverbal conduct. The defendant maintains that the victim's demeanor was part of her attempt "to convince her teacher and a police officer that she had been sexually assaulted." According to the defendant, "[i]f, as [he] asserts, the complaint was false from its inception, then there exists the possibility that [the victim] intended to mislead her audience by both word and deed." This argument is unpersuasive because it relies on the premise that the victim was intentionally lying when she reported the sexual assault and that she was feigning emotional distress to buttress her claim. The consequences of making such an assumption would be significant, as all demeanor testimony could be barred, whether helpful to the state or the defendant, on the basis of a mere allegation of duplicity on the part of the victim. The defendant points to no evidence, other than the delay in reporting the assault, to bolster this argument, and we do not find anything in the record of sufficient significance to draw the inference that the victim's demeanor was a mere pretense intended to facilitate the communication of a lie. Although this possibility may be relevant to the trial court's analysis of probative value and prejudice, and to the weight that the jury should give to the evidence once admitted, it does not affect its characterization as hearsay or non-hearsay.

Having determined that the demeanor testimony was not hearsay, we now must address whether it was relevant and whether its probative value was outweighed by its prejudicial effect. The relevance requirement, however, is a fairly low hurdle. Evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1; see also *State* v. *Sauris*, 227 Conn. 389, 406, 631 A.2d 238 (1993) ("[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue"), overruled in part on other grounds by *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 852 A.2d 703 (2004). "Relevant evidence is excluded, however, when its probative value is outweighed by the danger of unfair prejudice." *State* v. *Ferguson*, 260 Conn. 339, 359, 796 A.2d 1118 (2002); see also Conn. Code Evid. § 4-3. A determination regarding undue prejudice is a highly fact and context-specific inquiry. "[T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Rinaldi*, 220 Conn. 345, 355, 599 A.2d 1 (1991).

To be unfairly prejudicial, evidence must be likely to cause a disproportionate emotional response in the jury, thereby threatening to overwhelm its neutrality and rationality to the detriment of the opposing party. See *State* v. *Ferguson*, supra, 260 Conn. 359 (exclusion of evidence proper when "the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy" [internal quotation marks omitted]). A mere adverse effect on the party opposing admission of the evidence is insufficient. See id. "Evidence is prejudicial when it tends to have some adverse effect [on] a defendant beyond tending to prove the fact or issue that justified

its admission into evidence." (Internal quotation marks omitted.) *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986). Trial courts must exercise their discretion cautiously in balancing the probative value of nonassertive conduct testimony with any likelihood of undue prejudice to the defendant. Cf. *State* v. *McCarthy*, 197 Conn. 166, 173, 496 A.2d 190 (1985). "[I]n making its determination, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant in allowing the rebuttal." *State* v. *Graham*, supra, 14.

The demeanor testimony of Thorpe and Slocum clearly was relevant because it was offered to show that the victim's complaint was credible, which, if believed by the jury, ultimately made the occurrence of the assault more likely. There can be no question that the victim's emotional state when she made the complaint, as evidenced by her outward demeanor, was relevant to the ultimate question of whether a sexual assault occurred because it bore on her credibility. *State* v. *Martin*, supra, 38 Conn. App. 741. Further, evidence of the victim's emotional state was relevant to explain her delay in reporting the sexual assault. Contrary to the defendant's theory, it was equally plausible that the victim was so embarrassed, and in such shock and distress over having been sexually assaulted by someone whom she considered a father figure, that she could not bring herself to come forward immediately. When she finally did find the courage to report the assault, it would have been natural for the strong emotions she had suppressed for days to spill out.[10] These connec-

---

[10] The trial court perceptively noted this aspect of the testimony's relevance in making its ruling on admissibility. The court stated that the victim's emotional demeanor "suggests why she wasn't speaking before then. . . . [A]fter this time being bottled up and not having spoken to anybody else . . . she speaks and does so with great emotion. It seems to me that the fact that she spoke with great emotion is appropriate if for no other purpose than to negate the suggestion that she was not in the throes of the agony that she is claiming she felt by virtue of being sexually assaulted . . . ."

tions were sufficient to impart relevance to the evidence.

The defendant finally claims that, even if the demeanor testimony was relevant, it was unfairly prejudicial. We recognize that the potential for undue prejudice is significant with demeanor testimony. That potential is more acute when, as in the present case, the question of the defendant's guilt is based almost entirely on the credibility of the victim.

On the record before us, it does not appear that the trial court directly addressed the issue of unfair prejudice with respect to the demeanor testimony. The court did, however, note that the defendant had made such testimony "virtually essential" by effectively attacking the victim's credibility on the basis of the time lapse between the sexual assault and her first report of it. Because defense counsel opened the door to the demeanor testimony at trial by attacking the victim's credibility in this manner, the defendant's claim that he was unfairly prejudiced by the subsequent introduction of the testimony in response is less than persuasive. See id., 741 ("[t]he defendant, by his cross-examination, in effect, opened the door to this line of questioning and cannot now object to the state's later questioning on the same subject").

Viewed in its entirety, the record supports a determination that the demeanor evidence was not unduly prejudicial. We therefore cannot say that the court abused its broad discretion in admitting this testimony under the circumstances.

The judgment is affirmed.

In this opinion the other justices concurred.